UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSHUA GRAHAM,<br><br>            Plaintiff,<br><br>    v.<br><br>D. BASSHAM, P. ROBINSON,<br>et al.,<br><br>            Defendants. | CASE NO. 16-cv-5597-BHS-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR: January 12, 2018 |

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.

Although plaintiff has made allegations that, if proven, would be tantamount to deliberate indifference by defendants, those bare allegations are not supported by any admissible evidence. All of the admissible evidence leads to the opposite conclusion. In these circumstances, the Supreme Court and the Ninth Circuit have directed this Court to

conclude that plaintiff's claim cannot proceed and that defendants' motion for summary judgment should be granted.

Defendants are dentists and dental clerks employed by the DOC during the time of the alleged violations. Amended Complaint, Dkt. 37, ¶ 60. Plaintiff is an inmate at the Washington State Penitentiary ("WSP") and alleges that defendants violated his Eighth Amendment rights by allegedly removing the wrong tooth, denying him treatment of the correct tooth, and denying him emergency care and medication refills. *Id.* He also alleges the tort violations of medical malpractice and negligence. *Id. Id.* Defendants move for summary judgment, arguing in part that plaintiff's claims are unsupported by the factual record. Dkt. 53.

Although plaintiff attempts to raise an issue of material fact with his own allegations, plaintiff's allegations are directly and repeatedly contradicted by the record. Therefore, no reasonable fact finder could conclude that plaintiff's version of the facts is correct, and defendants' motion for summary judgment should be granted as to plaintiff's claims.

## BACKGROUND and FACTS

Plaintiff "is a long time resident of Washington State and was incarcerated at Washington State Penitentiary ["WSP"] during all times relevant to []his complaint." Dkt. 37, ¶ 5. On or about July 9, 2013, plaintiff "started experiencing extreme pain and 'bitter fluid' leaking from upper right teeth and asked WDOC Dental at WSP for an appointment." *Id.* at ¶ 8. Although plaintiff wanted less drastic treatment, because of pain,

plaintiff agreed to have one of his chewing molars removed by defendant Dr. D. Bassham, DDS. on July 18, 2013. *See id.* at ¶ 11.

Shortly thereafter, plaintiff reported that he still had severe pain in the upper right corner of his mouth, and believed that Defendant Bassham had removed the incorrect tooth *Id.* at ¶ 13; Dkt. 54-1, p. 4. On July 24, 2013, defendant Dr. Grant Rodkey, DDS, examined plaintiff and took an x-ray. Dkt. 37, ¶¶ 14-18. According to the treatment record, a "portion of distal tuberosity appears to have [fractured]." Dkt. 54-1, p. 4. Dr. Rodkey informed plaintiff that this fracture was causing [some of] his pain. Dkt. 37, ¶ 15; Dkt. 59-1, p. 3. The treatment record indicates that Dr. Rodkey informed plaintiff that he recommended not extracting the remaining upper right molar "due to sensitivity due to last chewing molar on [upper right] side [of] mouth." Dkt. 59-1, p. 3. The record also indicates that Dr. Rodkey recommended to plaintiff that he tolerate the pain "until he gets out and can have endo therapy.*" Id.* Dr. Rodkey apparently advised plaintiff to try to keep one chewing molar intact in the upper right side of his mouth.

On August 14, 2013, plaintiff ran out of his prescribed medication "and he was still experiencing pain in his right temple." Dkt. 37, ¶ 20. He made a request to a nurse regarding getting a dental appointment, and also to acquire more medication. *Id.* at ¶ 21.

This nurse emailed defendant Edith Escapule regarding the requested dental appointment. *Id.* at ¶ 22. According to the email chain, because plaintiff referred to his fractured distal tuberosity as a broken jaw, defendant Escapule indicated at the end of the email confirming an appointment in eight days that plaintiff "needs to stop lying to staff," as "neither one of the dentists broke his jaw . . . ." Dkt. 57-1, p. 2. Plaintiff alleges that

because of this email response, the unit nurse "denied [plaintiff] any pain medication (Naproxen) leaving [plaintiff] in serious pain and denying treatment." Dkt. 37, ¶ 24.

Plaintiff declared another dental emergency, and was seen by defendant Dr. Jonathan Gantz, DDS, on August 16, 2013. *Id.* at ¶ 26. According to Dr. Gantz' treatment record, plaintiff reported having pain in the upper right quadrant, reported that he had ran out of meds, and reported that "while on meds he had no pain." Dkt. 58, p. 1, ¶ 4; *see also* Dkt. 58-1, pp. 2-3. This treatment record also indicates that the x-rays performed "appear inconclusive as to healing of fractured tuberosity." Dkt. 58-1, p. 2. Dr. Gantz performed an exam and noted his observations: "clinically, healing appears normal -- no swelling or redness." *Id.* at 2-3.

Plaintiff alleges that he continued to complain in various ways about pain and swelling over the course of the next 10 days. *See e.g.,* Dkt. 37, ¶¶ 30, 32-33. On August 29, 2013, plaintiff "went to the evening pill line and spoke with Deborah Richter RN2." *Id.* at ¶ 38. She gave him a quick exam and medications which brought down his swelling and gave him pain relief. *Id.* at ¶¶ 38-39; *see also* Dkt. 71, p. 44 (Exhibit "F").

On September 4, 2013, plaintiff again sought treatment with Dr. Rodkey, and did not receive the treatment he desired (extraction of tooth #3). Dkt. 37, ¶¶ 45-47. Plaintiff continued to complain and file grievances regarding pain. *See id.* at ¶¶ 48-51. On October 24, 2013, and on November 5, 2013, plaintiff again unsuccessfully sought extraction of his number three molar from Dr. Rodkey. *See id.* at ¶¶ 52-53. On November 15, 2013, plaintiff sought treatment from Dr. Gantz, who extracted plaintiff's remaining upper right chewing molar (tooth #3). *See id.* at ¶ 55.

# PROCEDURAL HISTORY

Plaintiff, JOSHUA GRAHAM, proceeding *pro se* and *in forma pauperis* (Dkts. 1, 4)*,* filed his complaint on July 7, 2016. Dkt. 5. Plaintiff filed an amended complaint on May 25, 2017. Dkt. 37. Defendants served plaintiff with a *Rand* notice and copies of the motion for summary judgment and supporting documentation on September 13, 2017. *See* Dkts. 53-60.  Plaintiff filed a response to defendants' motion for summary judgment on November 25, 2017. Dkts. 70-71. Defendants filed their reply on December 1, 2017. Dkt. 72.

Plaintiff's amended complaint was signed under penalty of perjury and is being considered as evidence. Dkt. 37, p. 31. Because plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

# STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990).  The moving party is entitled to summary judgment if the evidence produced by

the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if summary judgment is appropriate, the court must consider whether particular facts are material and whether there is a genuine dispute as to the material facts left to be resolved. Fed. R. Civ. P. 56(c). Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). However, when presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro se complaint will be liberally construed . . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted). With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issues raised in this motion, *e.g.*, whether defendants acted with deliberate indifference or failed to follow the accepted standard of care for a healthcare provider. *See Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991).

Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The opposing party cannot rest solely on his pleadings but must produce

significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249-50. In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). However, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

## DISCUSSION

In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

### I.    Personal Participation

Plaintiff concedes defendants' argument that plaintiff failed to allege the personal participation of defendant Robinson. Dkt. 70, p. 8. Therefore, defendants' motion for summary judgment should be granted as to claims brought against defendant Robinson.

### II.    Retaliation

Plaintiff concedes defendants' argument that plaintiff's "retaliation claims against defendants Rodkey, Gantz and Robinson are unsupported." Dkt. 70, p. 10. Therefore,

defendants' motion for summary judgment should be granted as to plaintiff's claims alleging retaliation.

### III. Claims pursuant to the Eighth Amendment regarding Deliberate Indifference to Medical Needs, and Medical Malpractice and Negligence claims (Washington state law)

Plaintiff alleges that defendants removed the wrong tooth, denied treatment of the correct tooth, and denied emergency care and medication refills. Amended Complaint, Dkt. 37, ¶ 60. Defendants contend in part that plaintiff's claims are factually unsubstantiated.

To establish a constitutional violation pursuant to the Eighth Amendment due to inadequate medical care, a plaintiff must show "deliberate indifference" by prison officials to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For an inmate to state a claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Estelle*, 429 U.S. at 106. Such conduct is actionable under 42 U.S.C. § 1983. *See, e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *reversed on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9.

To establish deliberate indifference, a prisoner must show that a defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need.

*See McGuckin*, *supra,* 974 F.2d at 1060; *Estelle*, *supra,* 429 U.S. at 104. "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. *Hutchinson*, 838 F.2d at 394. According to the Supreme Court, an official can be found liable pursuant to the Eighth Amendment if "the official knows of and disregards an excessive risk to inmate health or safety . . . ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff also alleges state law claims of negligence and medical malpractice. In order to sustain a claim for medical malpractice, plaintiff must prove that defendant health care provider:

> [F]ailed to exercise that degree of care, skill and learning expected of a reasonably prudent health care provider at the time in the profession or class to which he or she belongs, in the State of Washington, acting in the same or similar circumstances; [and that] [s]uch failure was a proximate cause of the injury complained of.

RCW 7.70.040(1) and (2); *see also Branom v. State*, 94 Wash. App. 964, 968 974 P.2d 335 (1999) ("whenever an injury occurs as a result of health care, the action for damages for that injury is governed exclusively by RCW 7.70").

In order to establish both the standard of care and to prove causation in a medical malpractice action, in most cases, expert medical testimony is required. *Guile v. Ballard Cmty. Hosp.*, 70 Wash. App. 18, 25, 851 P.2d 689 (1993). Therefore, healthcare

providers are entitled to summary judgment once they demonstrate the nonmovant's lack of competent expert testimony demonstrating the standard of care and causation. *Id.*; *Moringa v. Vue*, 85 Wash. App. 822, 832, 935 P.2d 637 (1997).

### a. Alleged removal of the wrong tooth

Plaintiff contends that on July 18, 2013, he indicated to Dr. Bassham "that his second tooth from the back [tooth #3]was the source of pain and discomfort," but that he then extracted the last remaining molar -- tooth #2 (tooth #1, a wisdom tooth, already had been removed a decade previous). Dkt. 70, p. 3. Defendants move for summary judgment, arguing that plaintiff's "claim that the wrong tooth was extracted [is] unsupported by the factual record." Dkt. 53, p. 1. Indeed, the only support for this claim is plaintiff's allegation, which is contradicted in multiple ways by the record.

Plaintiff's dental treatment record from July 18, 2013 indicates that plaintiff "complains of a strong ache in UR [upper right] last molar [tooth #2.]," Dkt. 54-1, p. 4. This contemporaneous treatment record directly contradicts plaintiff's allegation that he told the dentist that it was the second to last molar (tooth #3). Furthermore, plaintiff's dental treatment record indicates that the dentist, Dr. Bassham, examined the last molar -- tooth "#2" -- and noted that it had deep periodontal pocketing and slight mobility of plus one. *Id.* His exam warranted extraction of tooth #2. *See id.* The Treatment Plan, as well as the Consent for Dental/Oral surgery form, both signed by plaintiff, also indicate that the tooth to be pulled would be tooth #2. *See id.* at pp. 6, 7. Furthermore, plaintiff's dental record from the subsequent period reveals minimal or no swelling in the tooth plaintiff alleges he was originally complaining about -- tooth #3. *See, e.g.,* Dkt. 59, pp. 2, 10 (on

07/24/13: "#3 NPL [no pathologies noted] . . . . 0 carries #3 noted"); Dkt. 71, p. 32 (on 8/16/13: "no swelling or redness"); Dkt. 71, p. 44 (on 08/29/13: "Some edema [swelling] no erythema [redness]"); Dkt. 58-1, p. 3 (on 09/04/13: "#3 shows slight inflammation but is adjacent to restoration margin"); Dkt. 71, p. 55 (also on 09/04/13: plaintiff "was afebrile (97.9 degrees)").

Defendants argue that "there is nothing in the factual record to indicate that [plaintiff's] tooth #3 need to be pulled on July 18, 2013, that [plaintiff] mistakenly consented to the extraction of tooth #2, or that Bassham mistakenly extracted tooth #2." Dkt. 53, p. 13 (citing Dkt. 54). Defendants further argue that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, the court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

Plaintiff offers only his own current contradicted statement in support of his allegation that he asked Dr. Bassham to pull tooth #3, tooth #3. Plaintiff offers no logical explanation for why in response to being asked to pull tooth #3, Dr. Bassham would write in the treatment record that plaintiff instead complained about the "last molar" (tooth #2) and would thereby pull a different tooth than plaintiff was complaining about. In the context of this factual record, plaintiff's claim is implausible. As argued by defendants, "where 'the factual contexts renders [the nonmoving party's] claim implausible . . . . [that party] must come forward with more persuasive evidence to support [his] claim then would otherwise be necessary' to show that there is a genuine issue for trial." Dkt. 53, pp

13-14 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In his response, plaintiff contends that Nurse Richter diagnosed plaintiff "with an abscess and had antibiotics prescribed." Dkt. 70 (citing Dkt. 71, p. 44 (Exhibit "F")). However, the record indicates that Nurse Richter assessed that plaintiff had an altered level of pain perception; she did not diagnose an abscess. Dkt. 71, p. 44. Regarding her suggested plan, she did prescribe antibiotics, but, instead of diagnosing an abscess, she instead indicated that there was a need to rule out the presence of an abscess. *See id.* ("DX: R/O Dental Abscess"). On her exam cited by plaintiff, she observed: "Some edema [swelling] no erythema [redness]." Dkt. 71, p. 44. This does not indicate abscess. Finally, as indicated in the record, Nurse Richter, as a nurse, is unable to diagnose impairments. Dkt. 59, p. 4.

Based on the record as a whole, for the reasons stated above, the Court concludes that plaintiff's version of the events regarding which tooth needed extraction is blatantly contradicted by the record such that no reasonable jury could believe it. Therefore, defendants' motion for summary judgment should be granted as to plaintiff's claim that his Eighth Amendment rights were infringed because the wrong tooth was extracted.

Plaintiff's medical malpractice and negligence claims regarding the allegation of the extraction of the "wrong" tooth also cannot survive based on the conclusion that plaintiff has failed to present admissible evidence to prove any material issue of fact with respect to the "incorrect" tooth being extracted. As just noted, plaintiff's allegation that the incorrect tooth was extracted in July 2013 is directly contradicted by the volume of

evidence in the record. Therefore, defendants' motion for summary judgment should be granted as to plaintiff's claims of medical malpractice and negligence, to the extent that plaintiff alleges that defendants extracted the incorrect tooth.

Even if the Court were to decline to adopt this recommendation regarding the alleged removal of the wrong tooth, defendants point out that the subjective component of plaintiff's medical claim "relates to the defendants' state of mind, and requires deliberate indifference." Dkt. 53, pp. 11-12.

The state of mind required by defendants in order for plaintiff to prevail "is one of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). The Supreme Court in *Farmer* was "require[d] [] to define the term 'deliberate indifference'" and noted that while *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) established "that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omission for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 828, 835. The Court held "that a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. The Court explained that "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The question of if "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." *Id.* at 842 (citations omitted).

Here, plaintiff has offered no evidence on the issue of defendants' state of mind. For example, no evidence suggests that Dr. Bassham knew that plaintiff wanted tooth #3 extracted but instead, intentionally, extracted the tooth #2. To the contrary, the only evidence, other than Dr. Bassham's declaration, regarding Dr. Bassham's state of mind is the dental treatment record, which includes his notes that plaintiff "complains of a strong ache in UR [upper right] last molar, [tooth #2]." *See* Dkt. 54-1, p. 4. Plaintiff does not allege any facts suggesting that any other defendant was involved in the extraction of tooth #2.

Therefore, regarding plaintiff's allegations of the extraction of the wrong tooth, plaintiff has failed to allege facts suggesting that any defendant acted with the subjective state of mind of deliberate indifference. Therefore, defendants' motion for summary judgment should be granted as to any claims of deliberate indifference with respect to which tooth was extracted on July 18, 2013 even if the Court finds that plaintiff has raised an issue of material fact.

### b. Whether plaintiff was unreasonably denied medical treatment regarding tooth #3 after the extraction of tooth #2

Plaintiff complains that he was unreasonably denied medical treatment with respect to tooth #3 and generally denied necessary medical care during the time immediately subsequent to the extraction of tooth #2. However, plaintiff has not submitted any opinion other than his own that the treatment he received was anything other than a difference of opinion, and plaintiff's allegation that his need for extraction of tooth #3 prior to the date of its extraction was sufficiently severe to constitute deliberate

indifference is blatantly contradicted by the record and no reasonable jury could believe it.

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9. In addition, to establish deliberate indifference, a prisoner must show that a defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. *See McGuckin*, *supra,* 974 F.2d at 1060; *Estelle*, *supra,* 429 U.S. at 104.

As noted previously, shortly after plaintiff's extraction of tooth #2, plaintiff reported that he still had severe pain in the upper right corner of his mouth. *Id.* at ¶ 13; Dkt. 54-1, p. 4. On July 24, 2013, defendant Dr. Rodkey examined plaintiff and noted that the x-ray indicated that a "portion of distal tuberosity appears to have [fractured]." Dkt. 37, ¶¶ 14-18; Dkt. 54-1, p. 4. Plaintiff does not appear to contend that this fracture supports an independent claim, but to any extent that he does, such claim should be dismissed, as discussed below.

In his declaration, Dr. Bassham declares as follows:

> When a tooth is removed, the bone overlaying the tooth roots may be thin and fragile and may even be bonded to or locked within the roots of the tooth. A piece of the thin bone may at times peel away or 'fracture' off as the tooth is removed. This happens most often on the buccal (cheek side) or tuberosity (bony prominence) in the upper arch of the mouth. The size of the fractured piece is usually small and has no effect on healing. Small fractures like the one just described is unavoidable in some cases and can be caused by any number of factors such as fragile bones, enlarged sinuses, or history of previous bone loss in the patient. In other cases, a larger piece of the bone may fracture during the extraction but would not break away, instead remaining held

in place of the gum tissues when the tooth is removed. Larger intact fractures of buccal bone may heal normally without further treatment. A larger fracture may not be observed by a provider during an extraction.

Areas of fractured bone and all the variations listed above are not fractures of the jaw.

. . . .

According to my notes in the [dental treatment record], the extraction of tooth #2 was considered routine . . . . There was no 'jaw fracture' during the extraction of #2. It was a simple, 'slip it out,' type of periodontally involved loose tooth.

Dkt. 54, ¶¶ 3-4.

Plaintiff has not offered any evidence that would create a material issue of fact regarding the above declaration of Dr. Bassham. Plaintiff also has not submitted any evidence regarding any required subjective state of mind necessary for a claim of deliberate indifference by Dr. Bassham. Therefore, the fracture itself cannot sustain such a claim and defendants' motion for summary judgment should be granted on this claim, as well.

Similarly, plaintiff has not submitted any evidence suggesting that the resultant fracture he suffered demonstrated that he had received treatment that was below a reasonable standard of care. In order to establish both the standard of care and to prove causation in a medical malpractice action, in most cases, expert medical testimony is required. *Guile v. Ballard Cmty. Hosp*., 70 Wash. App. 18, 25, 851 P.2d 689 (1993). Furthermore, as noted by defendants, Dr. Rodkey noted at plaintiff's September 4, 2013 appointment that the fractured tuberosity appeared to have healed according to an x-ray. Dkt. 53, p. 15 (citing Dkt. 59, ¶ 7 and Exhibit 2). Therefore, the fracture itself cannot

sustain a claim for medical malpractice and negligence and defendants' motion for summary judgment should be granted as to any such claims.

Dr. Rodkey informed plaintiff that this fracture was causing [some of] his pain. Dkt. 37, ¶ 15; Dkt. 59-1, p. 3. The treatment record indicates that Dr. Rodkey informed plaintiff that he recommended not extracting the remaining upper right molar "due to sensitivity due to last chewing molar on [upper right] side [of] mouth." Dkt. 59-1, p. 3. Also, at this time, Dr. Rodkey noted no pathology in tooth #3 and no disease causing tooth decay. *See* Dkt. 59, pp. 2, 10 (on 07/24/13: "#3 NPL [no pathologies noted] . . . . 0 caries #3 noted"). Although plaintiff refers generally to "a dying nerve in the original tooth," there is no citation provided for this allegation and, other than his bare allegation, plaintiff has not provided any evidence that he was suffering from "a dying nerve." *See* Dkt. 70, p. 5.

Defendants contend that plaintiff has not demonstrated that his request for treatment on or an extraction of tooth #3, versus Dr. Rodkey's recommendation to the contrary, is anything other than a difference of opinion. This contention is persuasive.

As noted by plaintiff, "Eighth Amendment doctrine makes clear that a difference of opinion between a physician and the prisoner-or between medical professionals-concerning what medical care is appropriate does not amount to deliberate indifference." Dkt. 53, p. 17 (citing *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citations and internal quotation marks omitted)).

Defendants had objective evidence supporting their decision not to provide earlier treatment to or extraction of tooth #3 prior to its treatment and extraction date.

As already noted, on July 24, 2013, Dr. Rodkey noted no pathology in tooth #3 and no disease causing tooth decay. *See* Dkt. 59, pp. 2, 10. He prescribed Naproxen for plaintiff at this time. *See* Dkt. 71, p. 31. On August 16, 2013, Dr. Gantz examined plaintiff and observed "no swelling or redness." Dkt. 71, p. 32. Dr. Gantz noted at that time that plaintiff "says that while on meds he had no pain." *Id.* at 31. Dr. Gantz also prescribed Naproxen, which appears to be the prescription that plaintiff indicated was working. *See id.* Shortly thereafter, on August 29, 2013, Nurse Richter observed: "Some edema [swelling] no erythema [redness]." Dkt. 71, p. 44. On September 4, 2013, Dr. Rodkey observed that tooth "#3 shows slight inflammation but is adjacent to restoration margin." Dkt. 58-1, p. 3. He also observed that there was "0 fistula; 0 exudate; 0 gross caries #3; no pain or discomfort elicited from palpation or from sliding rounded edge of Explorer over the areas of #2 and 3." *Id*. Dr. Rodkey also indicated that the extraction site showed a "normal healing pattern," and that x-rays demonstrated "complete tuberosity fusion," indicating that the fracture had healed. *See* Dkt. 59, p. 13. On October 24, 2013, Dr. Rodkey observed no radiographic changes and on exam, "no responses [with] Explorer." *Id*. at 14. On November 5, 2013, Dr. Rodkey opined that plaintiff had reversible pulpitis. Dkt. 59, p. 20. But, on November 15, 2013, plaintiff was experiencing "pain [] to cold and pressure as well as hot now - last week or so," and Dr. Gantz indicated "that it sounds like the tooth has progressed to an irreversible pulpitis and we can extract it for him." *Id*.; *see also* Dkt. 58, p. 9.

Plaintiff's allegation that he needed extraction of tooth #3 prior to the date of its actual extraction is contradicted by all of the evidence of the record, other than plaintiff's

bare allegations. The evidence delineated demonstrates that tooth #3 had not progressed to irreversible pulpitis until that last week before it was pulled. Objective evidence, from multiple doctors and a nurse, demonstrates no or few symptoms.

In addition, Dr. Rodkey pointed out a reason for his decision not to rely on plaintiff's subjective complaints of pain, as plaintiff had alleged that he had not eaten in three weeks; however, in contrast, Dr. Rodkey noted that plaintiff was weighed following leaving on September 4, 2013, and his "weight was eight ounces greater than [on] 6/4/13, so his statement was inconsistent given objective measurement - ('3 weeks of not eating')." *See id.* at 14. Similarly, Dr. Rodkey noted that plaintiff was not running a fever, that is, he "was afebrile (97.9 degrees) per encounter [with] [Nurse] Richter, RN2." *Id.*

The Court concludes that plaintiff's allegation that he needed additional treatment or extraction of tooth #3 prior to its treatment and extraction is blatantly contradicted by the record and no reasonable jury could believe it. Therefore, there are no true material facts in dispute on this claim, and the Court concludes that defendants' motion for summary judgment should be granted as to plaintiff's claim of deliberate indifference regarding any "delay" in the appropriate treatment of tooth #3.

Similarly, plaintiff provides no evidence other than his own bare allegation that the treatment he received fell below any reasonable standard of care. Therefore, the Court also concludes that plaintiff's claim regarding any "delay" in the treatment and extraction of tooth #3 as medical malpractice or negligence also should be dismissed with prejudice. *See Guile*, 70 Wash. App. at 25.

### c. Whether plaintiff was unreasonably denied medication refills or emergency treatment

In addition to plaintiff's claim that he received insufficient treatment of his tooth #3 after the extraction of his tooth #2, that was just discussed by the Court, *see supra*, section III, b, plaintiff also contends that he received insufficient medication for his pain during this timeframe. In addition to his own declaration, plaintiff has submitted the declaration of Joseph Medoro, who shared housing with plaintiff. *See* Dkt. 71, pp. 18-19. Mr. Medoro witnessed plaintiff complaining of pain to staff; moaning in pain during the night; staying in bed allegedly due to pain; and suffering from problems with his basic daily activities. *See id.* Mr. Medoro discusses this pain behavior he witnessed in general regarding a period of time of a few months. *See id.* In contrast, the record discussed below indicates the time line more specifically in the context of treatment, and demonstrates periods of time when plaintiff was receiving pain medication and/or was not exhibiting pain behavior.

Plaintiff does not refute that he was offered medication when Dr. Bassham extracted tooth #2, but declined them, indicating that "he has pain meds." Dkt. 54, p. 9 (54-1, p. 4). Therefore, by plaintiff's own admission, he was not in need of pain medication just after his extraction on July 18, 2013. *See id.*

On July 24, 2013, plaintiff reported that he still had severe pain in the upper right corner of his mouth, and defendant Dr. Grant Rodkey, DDS, examined plaintiff and took an x-ray. Dkt. 59-1, p. 10. Dr. Rodkey informed plaintiff that he had a fracture and that this fracture was causing some of his pain, as was a newly exposed distal root surface. *Id.*

at p. 11. The treatment record indicates that Dr. Rodkey wrote a prescription for Naproxen for plaintiff at this time, and also prescribed Dexamethasone. *Id*. In his declaration, Dr. Rodkey declares that the "purpose of Naproxen is similar to that of ibuprofen in helping to reduce inflammation at a site of pain." Dkt. 59, p. 2. He also declares that "Dexamethasone, a steroid, works by reducing the body's general inflammatory reaction, a different mechanism than ibuprofen and Naproxen." *Id*. Importantly, Dr. Rodkey declares that he has "used this [combination of prescriptions] very successfully for pain relief with a variety of dental patients with various pain sources." *Id*.

Although plaintiff may have been in pain, he has provided no evidence suggesting that Dr. Rodkey's provision of these prescriptions to deal with plaintiff's pain is an inappropriate response, or that it falls below any standard of care. He also does not provide any evidence suggesting that Dr. Rodkey knew that these prescriptions would not work well, but prescribed them anyway. Therefore, the facts in the record do not support any claim that any Dr. Rodkey was deliberately indifferent or committed medical malpractice or negligence with respect to treatment of plaintiff's pain.

On August 14, 2013, plaintiff ran out of his prescribed medication "and he was still experiencing pain in his right temple." Dkt. 37, ¶ 20. He asked a nurse for more medication and to get him an appointment to deal with what he thought was a complication that Dr. Rodkey had informed him about. *Id*. at ¶ 21. The nurse sent an email to defendant Escapule only requesting an appointment, and was informed that plaintiff already had an appointment. Dkt. 57-1, p. 2. Plaintiff alleges that because of the

wording of the email response from defendant Escapule to the nurse, (accusing plaintiff of lying), the nurse "denied [plaintiff] any pain medication (Naproxen) leaving [plaintiff] in serious pain and denying treatment." Dkt. 37, ¶ 24.

Although plaintiff complains that defendant Escapule is responsible for denial of treatment, defendant Escapule indicated in her email response that on 7/24 plaintiff "was told by Dr. Rodkey that we would get him back in four weeks to evaluate that area (post-up again) [and] I have him scheduled 8/22." Dkt. 57-1, p. 2. Plaintiff does not point to any evidence that would have put defendant Escapule on notice that she could not follow the doctor's recommendation in the treatment record or that his already-scheduled appointment was insufficient.

Similarly, although plaintiff contends that defendant Escapule's email response resulted in him being denied pain medication, there is nothing in the email sent to defendant Escapule cited by plaintiff indicating that plaintiff was out of pain medications or was requesting pain medications. *Id*. Instead, the email to defendant Escapule requests for her to schedule an appointment for plaintiff. *Id*. Defendant Escapule was not asked for a pain prescription, and there is no evidence that she has any ability or authority to provide pain medication. In addition, she was not informed that her response would be the basis for a denial of pain medication for plaintiff. The only action requested of her was to "please schedule asap," and she replied that plaintiff already was on the schedule. *Id*.

Plaintiff has not presented any evidence that defendant Escapule took any action indicating that she possessed the state of mind of intentionally disregarding a need for

treatment or medication. Therefore, defendants' motion for summary judgment should be granted as to plaintiff's claim that defendant Escapule was deliberately indifferent to his need for treatment or medication.

Similarly, the Court notes that defendant Escapule is a dental assistant. *See* Dkt. 57, p. 1. Plaintiff has not presented any facts suggesting that she breached any duty regarding his dental care, or that she had any ability or duty to ensure that he received appropriate medication. Nor has plaintiff submitted any evidence demonstrating that her actions fell below any particular standard of care. Therefore, to the extent that plaintiff attempts to bring medical malpractice and/or negligence claims against defendant Escapule, defendants' motion for summary judgment should be granted as to such claims.

Plaintiff declared another dental emergency, and was seen by defendant Dr. Jonathan Gantz, DDS, on August 16, 2013. *Id.* at ¶ 26. According to Dr. Gantz's treatment record, plaintiff reported having pain in the upper right quadrant, reported that he had run out of meds, and reported that "while on meds he had no pain." Dkt. 58, p. 1, ¶ 4; *see also* Dkt. 58-1, pp. 2-3. This treatment record directly contradicts plaintiff's report of pain during this entire time. It also indicates that the x-rays performed "appear inconclusive as to healing of fractured tuberosity." Dkt. 58-1, p. 2. Dr. Gantz performed an exam and noted his observations: "clinically, healing appears normal -- no swelling or redness." *Id.* at 2-3. Plaintiff has not presented any evidence that could demonstrate that these observations were incorrect. As plaintiff's healing appeared "normal," and as he did not have any swelling or redness, there is no evidence that he was being denied treatment that was necessary at that time. Furthermore, at this appointment, plaintiff was provided a

prescription for Naproxen, which is the medication that he had been on, which he apparently reported was sufficient to address his pain. *Id*. at 2.

Plaintiff alleges that he continued to complain in various ways about pain and swelling over the course of the next 10 days; however, as just noted, plaintiff had just received a prescription for his pain, which he had reported was working. *See id.; see also, e.g.,* Dkt. 37, ¶¶ 30, 32-33. He has not provided any evidence regarding inappropriateness or insufficiency of providing this prescription, or on it breaching any standard of care.

On August 29, 2013, plaintiff "went to the evening pill line and spoke with Deborah Richter RN2." *Id*. at ¶ 38. She gave him a quick exam and medications which brought down his swelling and gave him pain relief. *Id*. at ¶¶ 38-39; *see also* Dkt. 71, p. 44 (Exhibit "F").

On September 4, 2013, plaintiff again sought treatment with Dr. Rodkey, who noted that plaintiff's Tylenol three prescription had expired the previous day. Dkt. 58-1, p. 3. Dr. Rodkey also observed that tooth "#3 shows slight inflammation but is adjacent to restoration margin" and that there was "0 fistula; 0 exudate; 0 gross caries #3; [and] no pain or discomfort elicited from palpation or from sliding rounded edge of Explorer over the areas of #2 and 3." Dkt. 58-1, p. 3. Dr. Rodkey also indicated that the extraction site showed a "normal healing pattern," and that x-rays demonstrated "complete tuberosity fusion," indicating that the fracture had healed. *See* Dkt. 59, p. 13. Therefore, at this appointment, the record demonstrates that plaintiff's upper right quadrant of his mouth was healing normally, and further demonstrates that he was not exhibiting any pain or

discomfort when the "rounded edge of Explorer [was moved] over the areas of [teeth] #2 & 3."

Although plaintiff contends that he was suffering from extreme pain during this time, plaintiff's allegation is completely contradicted by the dental treatment record.

On October 24, 2013, plaintiff reported only that he was experiencing pain on tooth #3 to hot and cold when eating, but otherwise "no symptoms." Dkt. 59-1, p. 6. Dr. Rodkey observed no radiographic changes and on exam, "no responses [with] Explorer." *Id*. The record does not reflect, and plaintiff does not present any evidence demonstrating, that plaintiff was in need of treatment or medication at this time that he did not receive.

On November 5, 2013, Dr. Rodkey noted that plaintiff continued to report temperature sensitivity, as well as throbbing, "mainly when eating." Dkt. 59-1, p. 12. He noted no radiographic changes. *Id*. Dr. Rodkey provided plaintiff with a prescription for Dexamethasone for swelling and pain. *Id*. Plaintiff has not provided any evidence demonstrating that he required additional treatment at this particular appointment, or that the pain prescription provided by Dr. Rodkey was insufficient. Again, plaintiff's allegation that he was being denied necessary treatment is completely contradicted by the dental treatment record. Ten days later, plaintiff's tooth #3 was extracted. Dkt. 58, p. 9.

Plaintiff alleges that he was negligently being denied treatment and medication during the period of time when his healing objectively appeared to be progressing normally. Furthermore, the record demonstrates that plaintiff failed to demonstrate pain

behaviors when the doctors touched the allegedly painful area with a dental tool (the "Explorer"). Although plaintiff attempts to raise an issue of material fact with his own allegations, and a declaration from another inmate indicating that plaintiff generally complained of pain over the course of several months, plaintiff's allegations are directly and repeatedly contradicted by the contemporaneous record. Therefore, no reasonable fact finder could conclude that plaintiff's version of the facts is correct, and defendants' motion for summary judgment should be granted as to all of plaintiff's claims.

## IV.    Qualified Immunity

The Court has concluded that defendants' motion for summary judgment should be granted as to all of plaintiff's claims. Therefore, the issue of qualified immunity will not be discussed.

## CONCLUSION

The undersigned recommends that defendants' motion for summary judgment (Dkt. 53) be **GRANTED;** all of plaintiff's claims should be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012)

(citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on January 12, 2018, as noted in the caption.

Dated this 19th day of December, 2017.

_____
J. Richard Creatura
United States Magistrate Judge